UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 17 CV 01547 (15 CR 149) |
| v. | ) | |
| | ) | Judge John Z. Lee |
| HASAN R. EDMONDS | ) | |

**GOVERNMENT'S RESPONSE TO PETITIONER'S
SUPPLEMENTAL SECTION 2255 MOTION**

In his Supplemental Motion to Vacate, Set Aside, or Correct Sentence, Petitioner-Defendant Hasan Edmonds ("Petitioner") contends that he was deprived of effective assistance of counsel because (1) his counsel failed to raise a violation of his Constitutional rights during plea negotiations that resulted from his allegation of a reverse sting and (2) his counsel gave him poor advice during plea negotiations. As a result of his perceived grievance, Petitioner is seeking to reopen plea negotiations. (Dkt. #13)[1] Because the record clearly establishes that Petitioner is entitled to no relief, his supplemental motion, along with his original motion, should be denied without an evidentiary hearing.

I. **PROCEDURAL BACKGROUND**

On December 4, 2015, Petitioner was charged in a superseding information with two counts of conspiring to provide material support to a foreign terrorist organization, specifically the Islamic State of Iraq and the Levant (ISIL), in violation

---

[1] References to "Dkt. #__" are to the relevant civil docket entries in case 17 CV 01547. References to "Cr. Dkt. #__" are to the relevant criminal docket entries in case 15 CR 149. References to "12/14/2015 Tr. at __" denote citations to the transcript of the change of plea hearing held on December 14, 2015, and references to "09/20/2016 Tr. at __" denote citations to the transcript of the sentencing hearing held on September 20, 2016.

of 18 U.S.C. § 2339B(a)(1). (Cr. Dkt. #48). On December 14, 2015, Petitioner pled guilty to both counts of the superseding information pursuant to a written plea agreement (Cr. Dkt. ## 56, 57).

On September 20, 2016, Petitioner was sentenced to 30 years' incarceration. (Cr. Dkt. #90). On February 27, 2017, Petitioner filed a motion pursuant to 28 U.S.C. § 2255. (Dkt. #1). On March 27, 2017, the government filed its response (Dkt. #4). On July 18, 2018, Petitioner filed this supplemental motion pursuant to 28 U.S.C. § 2255 (Dkt. #13).

## II.     ARGUMENT

Petitioner presents two arguments in his motion in which he states "is not directed toward challenging the guilty plea. Rather, this motion is a request to re-open the plea agreement process." (Dkt. #13 at p.1). First, he argues that he was provided with ineffective assistance of counsel because his attorney "failed to introduce credible evidence that shows discriminatory tactics undertaken by the government whom disproportionately targeted minority groups based on religious ideology in their 'reverse sting' operations in pursuit of their war on terror." Second, he argues that his attorney provided poor advice in regard to counsel's recommendation not to pursue the government's inquiry regarding an agreed upon sentence pursuant to Fed. R. Crim. Pr. § 11(c)(1)(C).

### A.     "Reverse Sting"

In support of his belief that his counsel was ineffective for failing to pursue a "reverse sting" argument during plea negotiations, Petitioner submits a portion of a document (hereinafter referred to as "the memo") that addresses selective

enforcement in terrorism cases (Dkt. #13 at p. 3) and a newspaper article that quotes a professor who studies terrorism. (Dkt. #13 at Ex. E). Neither exhibit comes close to satisfying Petitioner's burden.

In order to prevail on a selective enforcement/prosecution claim, Petitioner "must demonstrate that the federal prosecutorial policy had a discriminatory effect and that it was motived by a discriminatory purpose." *United States v. Armstrong*, 517 U.S. 456, 465 (1996) (citation omitted). To establish a discriminatory effect, "the claimant must show that similarly situated individuals of a different race were not prosecuted." *Id.; Wayte v. United States*, 470 U.S. 608 (1985); *Barlow*, 310 F.3d at 1010 ("To prevail on his motion, therefore, Barlow needed to demonstrate that the agents' actions had a discriminatory effect and that the agents had a discriminatory purpose."); *United States v. Hayes*, 236 F.3d 891, 895 (7th Cir. 2001).

The memo argues that the government has failed to pursue investigations against similarly situated individuals it identifies as "non-Islamic extremists," who include white national extremists, white supremacists and anti-government extremists whose actions meet the definition of violent extremists and terrorism. (Dkt. #7 at p. 3).[2]

In attempting to align the groups, the memo states that "non-Islamic extremists" are driven by an ideology that is similar to Islamic extremists and that both use similar violent tactics. These very broad strokes result in an apples to oranges comparison. First, the groups are not similarly situated. The commonality

---

[2] The memo is the same document submitted by Petitioner's co-defendant Jonas Edmonds. (17-CV-06922, Dkt. #7 at Ex. E). Petitioner's version is missing the first three pages.

among the two groups are that they both hate the government and commit violent acts. That limited type of comparison is too broad and insufficient to support the claim that the groups are similarly situated or that the criminal behavior is comparable. *United States v. Davis*, 793 F.3d 712, 720 (7th Cir. 2015) ("[T]he Court in Armstrong insisted that the defendant produce evidence that persons of a difference race, but otherwise comparable in criminal behavior, were presented to the United States Attorney for prosecution, but that prosecution was declined."). Petitioner was targeted because of his support to a designated foreign terrorist organization (ISIL) through his expressed desire to join ISIL and to assist his cousin in attacking a National Guard base in the name of ISIL. "Non-Islamic extremists," by the very examples identified in Petitioner's memo, act domestically and are driven by an ideology based on racial superiority. A more apt comparison would be Petitioner to a group of non-Islamic individuals who conspire to provide support to foreign terrorist organizations, who the FBI are aware of but who are not investigated by the FBI specifically because they are not Muslims. Petitioner has failed to suggest such a comparison or that such a scenario even exists.

 Second, the memo relied upon by Petitioner is fundamentally flawed – it makes no allegation that the FBI does not commit "reverse terror stings" against "non-Islamic extremists" or even that the FBI does not investigate such groups. "Entirely absent is the information essential for a selective prosecution allegation – that persons of another race who fell within Operation Triggerlock guidelines were not federally prosecuted." *Hayes*, 236 F.3d at 895.

Third, the memo challenges the method of investigation used against Petitioner. In order to prevail on a selective enforcement defense, Petitioner would have to demonstrate a *lack* of investigations against a similarly situated group based upon a protected status, not attack the *method* of investigation. In other words, discrimination is relevant if the FBI never investigated "non-Islamic" individuals or groups, not how the FBI investigates them. To that end, the memo does not make any allegation that the FBI failed to investigate non-Islamic extremists. *United States v. Westmoreland*, 122 F.3d 431, 434 (7th Cir. 1997)("Westmoreland makes no claim, for example, that the government failed to prosecute Caucasians whom the government believed had committed crack cocaine offenses."); *Hayes*, 236 F.3d at 895-96. Moreover, unlike the Petitioner's case, the memo presents no information that the FBI was aware of the planning of the attacks committed by the "non-Islamic extremists" that would have allowed for an investigation.

In support of his motion, Petitioner also submits a portion of an article that contains a quote from a law professor supporting the notion that right wing violence is a greater threat than "jihadi terrorism." (Dkt. #13 at Ex. E). The underlined quotes, whether accurate or not, add nothing to Petitioner's argument that the FBI engaged in selective enforcement against him.

Petitioner has failed to allege "intentional discrimination and present facts sufficient to raise a reasonable doubt about the prosecution." *United States v. Taylor*, 798 F.2d 271, 274 (7th Cir. 1986). Petitioner's counsel "exercised reasonable professional judgment when declining" to pursue a reserve sting argument during

5

plea negotiations because there was no evidence supporting such an argument. *United States v. Brown*, 2015 WL 7077244 *3 (N.D.IL November 13, 2015). Moreover, Petitioner has failed to show how such an argument would have had any effect or impact on the plea negotiations.

*The FBI Did Not Engage in a Sting Operation*

Petitioner, and his supporting memo, compares his case to stash house cases, which typically involve a reverse sting whereby a government actor introduces the subject to the idea of robbing a non-existent drug/stash house. *See generally, Ward v. United States*, 858 F.3d 1072, 1073 - 74 (7th Cir. 2017). (Dkt. #13 at p. 1 and 8). In effect, by comparing his situation to stash house cases, Petitioner is arguing that he was entrapped.

In order to prevail on an entrapment defense, a defendant must establish government inducement and a lack of predisposition. *United States v. Mayfield*, 771 F.3d 413, 431 (7th Cir. 2014). In this case, Petitioner would not have been able to satisfy either element. The evidence against Petitioner consisted of online communications wherein Petitioner unequivocally stated his desire to travel to Egypt to join ISIS, and undercover recordings where Petitioner is clearly heard providing information to his cousin and the UC in order to aid them in his cousin's plan to conduct an attack on the National Guard base. The recordings demonstrate that the idea of traveling to the Middle East to join ISIL, and the idea to commit the attack against the National Guard base, all originated with Petitioner and Jonas Edmonds. Petitioner freely acknowledged these facts in his guilt in his plea agreement and

before this Court. (12/14/2015 Tr. at 20-25).[3] Moreover, a government agent's mere contact with a defendant, their solicitation of the crime or an opportunity to commit it, is not inducement. *Id.* at 432.

Petitioner's counsel exercised reasonable judgment when he did not pursue a "reverse sting" argument during plea negotiations.

### B. Plea Discussions

Petitioner argues, as his second point in the supplemental filing, that his counsel was ineffective because counsel misled Petitioner into believing that "an open plea was a surer course" to a sentence lower than what the government informally raised as part of a potential 11(c)(1)(C) plea agreement. (Dkt. #13 at p.2). Petitioner states that the counsel's prior sentencing experience with the Court did "not apply to the nature of my case given the automatic inhancements (sic) leveled against persons with terroristic type cases." *Id.*

Petitioner's allegation that his counsel affirmatively advised against the government's informal presentation based on his counsel's experiences with the Court, is an extension of an argument Petitioner has raised in his original filing. The

---

[3] After the government's presentation of the facts, the Court asked the following:

THE COURT: "Mr. Edmonds, having heard the factual evidence that the government intends to present at trial if this case were to proceed to trial, do you agree that those facts as stated by the government are true?

THE DEFENDANT: Yes.
(12/14/2015 Tr. at 25).

7

government has previously addressed this argument and directs the Court to pages 14 through 16 of its original response. (Dkt. #4, p. 14 – 16).

## CONCLUSION

For the reasons set forth above and in the government's Response to 2255 Motion (Dkt. #4), the Court should deny Petitioner's motion without holding an evidentiary hearing.

Date: August 8, 2018

                                    Respectfully submitted,

                                    JOHN R. LAUSCH, JR.
                                  United States Attorney

By:    */s/ Barry Jonas*
        BARRY JONAS
        Assistant United States Attorney
        United States Attorney's Office
        219 South Dearborn Street, Fifth Floor
        Chicago, Illinois 60604
        (312) 886-8027

## CERTIFICATE OF SERVICE

The undersigned Assistant United States Attorney hereby certifies that the following document:

**RESPONSE TO SECTION 2255 MOTION**

was served on August 8 2018, in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, L.R. 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

The foregoing document was also served by First Class U.S. Mail, postage prepaid, on the following:

Hasan R. Edmonds
Prisoner No. 46727424
USP Big Sandy
U.S. Penitentiary
P.O. Box 2068
Inez, KY 41224

                                               */s/ Barry Jonas*
                                                    Barry Jonas