# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 17 C 1547 |
| v. ) | |
| ) | Judge John Z. Lee |
| HASAN R. EDMONDS, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Hasan R. Edmonds ("Edmonds") has filed a motion and a "supplemental" motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. For the reasons stated herein, Edmonds's motions are denied.

### I. Factual Background

Beginning in January 2015, Edmonds—then a member of the Army National Guard assigned to a unit in the Northern District of Illinois—engaged in online communications with someone he believed to be a fighter for the Islamic State of Iraq and the Levant ("ISIL") in Libya. Plea Agreement at 3, No. 15 CR 149, ECF No. 57. In fact, the individual was an FBI employee. *Id.*

During these communications, Edmonds expressed support for ISIL and indicated that he wanted to travel to the Middle East with his cousin and codefendant, Jonas Edmonds ("Jonas"), to fight for ISIL. *Id.* He also gave the employee advice on fighting and defeating the U.S. military, and stated that he and Jonas were willing to carry out an attack in the United States if ordered to do so. *Id.*

A confidential law enforcement source then introduced Jonas to an undercover FBI employee ("UC"), who Jonas believed could assist them in their plan to travel abroad to support ISIL. *Id.* at 4. As part of this plan, Edmonds purchased a plane ticket to Cairo, Egypt on March 11, 2015. And on March 23, 2015, he and Jonas met with UC to discuss what steps they could take to support ISIL. *Id.* at 4–5.

During that meeting, Jonas told UC that, once Edmonds left for Egypt, Jonas planned to attack the National Guard base to which Edmonds was assigned. *Id.* at 5. Jonas also told UC that he anticipated a "body count" of between 100 and 150 people, and Edmonds offered to provide a list of "rankings" of officers for Jonas to kill. *Id.* Edmonds also stated that he would provide Jonas with military uniforms to wear as a disguise during the attack. *Id.*

On March 24, 2015, Edmonds, Jonas, and UC drove to Edmonds's National Guard base in Joliet, Illinois, to conduct surveillance and plan the attack. *Id.* On the way there, Edmonds and Jonas discussed with UC how they would acquire the necessary weapons and conduct the attack. *Id.* Once they arrived outside the base, they also reviewed where the National Guard members conducted their training on the base. *Id.* Edmonds then described the interior of the base and what rooms Jonas needed to avoid during the attack. *Id.* at 6. Edmonds also entered the base and retrieved a unit training schedule, which he provided to Jonas for the purpose of determining the best day for the planned attack. *Id.*

The following day, Jonas drove Edmonds to Chicago Midway Airport so that Edmonds could travel to the Middle East to fight for ISIL. *Id.* Jonas then proceeded

to Edmonds's residence and retrieved several National Guard uniforms, which he planned to wear for the attack. *Id.* Edmonds and Jonas were both arrested later that day. *See* Orders of 3/26/15, No. 15 CR 149, ECF Nos. 7, 10.

## II. <u>Procedural Background</u>

On December 4, 2015, Edmonds was charged in a superseding information with two counts of conspiring to provide material support to a foreign terrorist organization, in violation of 18 U.S.C. § 2339B(a)(1). *See* Superseding Info., No. 15 CR 149, ECF No. 48. He pleaded guilty to both counts pursuant to a written plea agreement on December 14, 2015, *see* Order of 12/14/15, No. 15 CR 149, ECF No. 56; Plea Agreement. And, on September 30, 2016, he was sentenced to 30 years of imprisonment by this Court. *See* Judgment, No. 15 CR 149, ECF No. 90.

Seeking to vacate that judgment, Edmonds filed a § 2255 motion on February 27, 2017, *see* § 2255 Mot., ECF No. 1, and a "supplemental" petition on July 18, 2018. *See* Am. § 2255 Mot., ECF No. 13.

## III. <u>Legal Standard</u>

Section 2255 provides that a criminal defendant is entitled to relief from his conviction and sentence if "the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). Relief under § 2255 is available "only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a

3

fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878–79 (7th Cir. 2013). Furthermore, the Court may deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show" that the defendant is not entitled to relief. 28 U.S.C. § 2255(b).

## IV. Analysis

Edmonds claims that the assistance provided by his trial counsel was constitutionally deficient for four reasons. In his original § 2255 petition, Edmonds argues that his counsel provided ineffective assistance by: (1) refusing to follow his instructions and present any suggested defense, interview witnesses, or introduce evidence that would "impeach the prosecution's claims"; and (2) failing to advise him of the "possibilities of negotiating better terms" for a plea agreement. § 2255 Mot. at 12.

After he was permitted to file an amended petition, Edmonds submitted a declaration claiming that his counsel provided ineffective assistance for two additional reasons, by: (3) "fail[ing] to introduce credible evidence that shows discriminatory tactics undertaken by the government whom disproportionately targeted minority groups based on religious ideology in their 'reverse sting' operations in pursuit of their war on terror"; and (4) recommending that he not pursue an agreed sentence pursuant to Fed. R. Crim. P. 11(c)(1)(C). Am. § 2255 Mot. at 1–2.

4

To succeed on any of his ineffective assistance of counsel claims, Edmonds must satisfy the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, he must show that his attorney's performance was constitutionally deficient insofar as it "fell below an objective standard of reasonableness" as measured against "prevailing professional norms." *Id.* at 688. Second, he must show that any error made by his attorney caused him prejudice. *Id.* at 692. For the reasons provided herein, the Court concludes that Edmonds cannot make either showing.

## A. Failure to Follow Instructions

As an initial matter, Edmonds's amorphous claims that his counsel had a "separate, undisclosed agenda" and refused to follow his instructions, § 2255 Mot. at 4, are insufficient to establish that his attorney's performance was constitutionally deficient. "To satisfy the first element of the *Strickland* test, [a § 2255 petitioner] must direct the Court to specific acts or omissions by his counsel." *Blake*, 723 F.3d at 879 (citation omitted). Here, although he makes general reference to his attorney not listening to him and failing to present exonerating evidence, Edmonds does not identify any specific instructions his attorney failed to follow, any witnesses he failed to interview, any defense he failed to present, or any evidence he failed to introduce. In his reply to the Government's response, Edmonds merely states that "a 'reasonable' and 'professional' attorney of any standing" would not "place his or her client at the 'mercy of the court' . . . given that terrorism is a political charge" requiring consideration of the "socio-political connotations and ramifications." Reply at 2, ECF No. 17. Such unsupported and conclusory statements are insufficient to

5

overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland*, 466 U.S. at 689; *see also Hurlow v. United States*, 726 F.3d 958, 966–67 (7th Cir. 2013) ("We have rejected broad, unsupported assertions of ineffective assistance.").

Furthermore, during his change-of-plea hearing, Edmonds confirmed under oath that he was satisfied with the representation that he had received from his attorney. *See* 12/14/15 Tr. at 8:3-11, No. 15 CR 149, ECF No. 94. There is a presumption that a defendant's testimony in a plea colloquy is truthful, *see United States v. Moody*, 770 F.3d 577, 581–82 (7th Cir. 2014), and nothing in the record here suffices to overcome that presumption. Given Edmonds's statements during the plea colloquy and the conclusory nature of the allegations presented in his petition, there is no basis for Edmonds's claim that his attorney provided ineffective assistance by failing to follow his instructions.

**B.    Plea Negotiations**

In both petitions, Edmonds contends that his counsel was ineffective for failing to negotiate a Rule 11(c)(1)(C) plea agreement. He states that the Government offered and then withdrew a plea agreement that "recommended a sentence that was less than the time imposed by the Court." § 2255 Mot. at 12–13. Furthermore, he asserts that he was misled by his attorney into believing that "an open plea was a surer course" to receiving a lower sentence than what the Government had proposed. Am. § 2255 Pet. at 7. Because the Sixth Amendment right to counsel "extends to the

plea-bargaining process," *Lafler v. Cooper*, 566 U.S. 156, 162 (2012), this claim also is governed by the *Strickland* standard.

At the outset, it must be noted that a criminal defendant has "no right to be offered a plea" and no right "that the judge accept it." *Missouri v. Frye*, 566 U.S. 134, 148 (2012). And even if a defendant's attorney pursues a plea agreement, "the successful negotiation of a plea agreement involves factors beyond the control of counsel." *United States v. Hall*, 212 F.3d 1016, 1022 (7th Cir. 2000).

Here, although Edmonds's filings make clear that, in hindsight, he wishes he had entered into a Rule 11(c)(1)(C) agreement, there is no evidence that such an agreement would have come to fruition. According to the Government, it merely had made an informal inquiry to Edmonds's counsel whether Edmonds "would be interested in discussing [a Rule] 11(c)(1)(C) plea agreement wherein the parties would agree to a term of imprisonment of 27 years," to which the attorney responded that Edmonds "was not interested." Gov't Resp. at 11, ECF No. 4. But, even if the parties had been able to arrive at such an agreement, there was no assurance that this Court would have accepted it. This is particularly true given that Edmonds's degree of culpability was substantially greater than that of Jonas, who received a sentence of 21 years, as the Court discussed during Edmonds's sentencing hearing. *See* 09/20/2016 Tr. at 10.

What is more, to the extent that Edmonds understood (rightly or wrongly) from his attorney that the Court would sentence him to less than 27 years of incarceration, the Court took pains during the plea colloquy to make sure that Edmonds realized

7

that he could not rely upon that understanding and that the Court could sentence him to a term of incarceration that was higher than what Edmonds might have anticipated based upon discussions with his attorney. *See* 12/14/15 Tr. at 18:3-2.

For these reasons, Edmonds is not entitled to relief on this ground.

## C.   "Reverse Sting"

In his supplemental petition, Edmonds argues that his attorney was ineffective for failing to pursue a "reverse sting" argument during the plea-negotiation phase. To support this claim, Edmonds submits a portion of a memorandum addressing selective enforcement in terrorism cases, as well as a newspaper article discussing domestic terrorism. *See generally* Am. § 2255 Pet. at 4–16.[1]   Neither of these documents establishes that Edmonds is entitled to *habeas* relief.

To prevail on a claim of selective enforcement, a petitioner must show that the law-enforcement actions at issue "had a discriminatory effect" and "[were] motivated by a discriminatory purpose." *United States v. Armstrong*, 517 U.S. 456, 465 (1996) (internal quotation marks omitted).[2] In other words, a petitioner must establish that (1) other similarly situated persons were not investigated by law enforcement; and (2) the basis for the investigation was some impermissible classification such as race, religion, or the exercise of constitutional rights. *United States v. Monsoor*, 77 F.3d 1031, 1034 (7th Cir. 1996).

---

[1]   Page numbers for the memorandum refer to the number typed at the bottom of each page, rather than the ECF page number added at the top of each page.

[2]   While *Armstrong* is a selective-prosecution case, "the same analysis governs both" selective-prosecution and selective-enforcement claims. *United States v. Barlow*, 310 F.3d 1007, 1010 (7th Cir. 2002).

8

The memorandum attached to Edmonds's petition argues that "Islamic extremists" are disproportionately "targeted and prosecuted by the FBI in their reverse terror stings," even though "non-Islamic extremists have committed more attacks" and are "more susceptible to commit acts of violence or engage in terrorist activities." Am. § 2255 Pet. at 11–12. In support, it cites to various statistics about the number of fatal attacks carried out by Islamic extremists as compared to "non-Islamic extremists." But such broad characterizations, without more, fall short of demonstrating that "similarly-situated defendants of other [religions] could have been [investigated] but were not." *United States v. Hayes*, 236 F.3d 891, 895 (7th Cir. 2001).

*Armstrong* is instructive. 517 U.S. 456. There, the respondents, who were Black, claimed that the United States Attorney's Office for the Central District of California was selectively targeting Black individuals for prosecution in crack cocaine cases. In support, they submitted an affidavit by a paralegal from the Federal Public Defender's Office, as well as an accompanying "study," that claimed that every one of the twenty-four crack cocaine cases closed by the government that year was against a defendant who was Black. *Armstrong*, 517 U.S. at 459. Based on this evidence, the respondents sought discovery from the government under Fed. R. Crim. 16.

The district court and the Ninth Circuit (siting *en banc*) agreed. But the Supreme Court reversed. Noting that the respondents had to "show that similarly situated individuals of a different race were not prosecuted," *id.* at 455, the Supreme Court found the submitted affidavit and "study" lacking, because they "failed to

9

identify individuals who were not Black and could have been prosecuted for the offenses for which respondents were charged, but were not so prosecuted," *id.* at 470.

Here, too, Edmonds fails to identify a single person of another religion who was similarly situated to him but was not subjected to the same enforcement tactics that the government utilized here. *See also United States v. Davis*, 793 F.3d 712, 720 (7th Cir. 2015) (noting that the Supreme Court in *Armstrong* "insisted that the defendant produce evidence that persons of a different race, but otherwise comparable in criminal behavior, were presented to the United States Attorney for prosecution, but that prosecution was declined"). And, because "[f]ailure to raise a losing argument . . . does not constitute ineffective assistance of counsel," *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996), Edmonds is not entitled to relief on the grounds that his attorney did not pursue a selective-enforcement argument in this case.

Relatedly, to the extent Edmonds argues that counsel was ineffective for not raising an entrapment defense and analogizing to "stash house cases,"[3] his argument also fails. To prevail on such a defense, a defendant must show government inducement and a lack of predisposition. *United States v. Mayfield*, 771 F.3d 417, 431 (7th Cir. 2014). Here, the opposite was true. The idea of traveling to the Middle East to join ISIL, as well as the idea to attack the National Guard base, originated with Edmonds and Jonas. *See* Plea Agreement at 2–7. At his change-of-plea hearing, Edmonds admitted this, *see* 12/14/15 Tr. at 25:4–8, and that admission is

---

[3] Such cases typically involve a government actor introducing a subject to the idea of robbing a nonexistent drug "stash" house. *See generally Ward v. United States*, 858 F.3d 1072, 1073–74 (7th Cir. 2017).

10

presumptively truthful, *see Moody*, 770 F.3d at 581–82. Nor has Edmonds offered any evidence to overcome that presumption. In light of these facts, it was reasonable for Edmonds's counsel to decide not to pursue an entrapment defense.

## V.     Conclusion

For the reasons stated herein, Edmonds's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 is denied. Because the "motion, files, and records of [this] case conclusively show that [Edmonds] is entitled to no relief," the Court finds that an evidentiary hearing is not necessary to adjudicate his claims. *Hutchings v. United States*, 618 F.3d 693, 699–700 (7th Cir. 2010) (citations and quotation marks omitted).

Furthermore, the Court finds that Edmonds has not made a substantial showing in his motions that his constitutional rights were denied. As such, Edmonds has not "demonstrate[d] that reasonable jurists would find the district court's assessment of his constitutional claims debatable or wrong," *United States v. Fleming*, 676 F.3d 621, 625 (7th Cir. 2012) (citation omitted), and the Court declines to issue a certificate of appealability under 28 U.S.C. § 2253(c).

**IT IS SO ORDERED.**               ENTERED:  4/6/20

                                                                  _____
                                                                  **John Z. Lee**
                                                                  **United States District Judge**